**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Genetic Technological Innovations LLC, | No. CV-24-00838-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Christopher Myers, | |
| Defendant. | |

At issue is the Motion for Summary Judgment filed by Plaintiff Genetic Technological Innovations LLC ("GTI") (Doc. 21, MSJ), supported by a Statement of Facts (Doc. 22, Pl.'s Statement of Facts ("PSOF")). Defendant Christopher Myers filed a Response (Doc. 30, MSJ Resp.), supported by a Statement of Facts (Doc. 31), and Plaintiff filed a Reply (Doc. 32, MSJ Reply).[1] Also at issue is Defendant's Motion for Relief Under Rule 56(d) (Doc. 23, 56(d) Mot.), to which Plaintiff filed a Response (Doc. 26, 56(d) Resp.) and Defendant filed a Reply (Doc. 27, 56(d) Reply). The Court will resolve these Motions without oral argument. LRCiv 7.2(f).

**I.    BACKGROUND**

Defendant Christopher Myers owns Hermes Health Labs, LLC ("Hermes"), which he formed to provide clinical laboratory testing services. (Doc. 1, Compl. ¶ 6; Doc. 31 at 50–57, Def.'s Additional Material Facts ("DAMF") ¶ 2.) In November 2022, Myers met Nick Glimcher, who owns Plaintiff GTI, a laboratory testing company operating in

---

[1] The Court granted Defendant leave to file a Sur-Reply, but Defendant did not timely file one. (Doc. 36.)

Arizona. (Compl. ¶ 1; DAMF ¶ 1.) On April 6, 2023, GTI and Hermes entered into a Revolving Loan Agreement ("RLA") under which GTI agreed to extend Hermes a line of credit for $500,000. (PSOF ¶ 2; PSOF Ex. 2, RLA.) Concurrently, GTI and Hermes executed a Revolving Promissory Note setting forth the terms of Hermes's repayment of the money GTI loaned it under the credit line. (PSOF Ex. 3, Note.) In addition, Myers, a company called Hermes Health Holdco, LLC—of which Myers is the founder—and a company called Hermes Health Sciences, LLC—of which Glimcher is the Chief Executive Officer—entered into a Guaranty Agreement in which those three parties agreed to act jointly and severally as Guarantors for repayment of the loan from Hermes to GTI. (PSOF Ex. 4, Guaranty Agreement.)

Hermes failed to make the required payments to GTI under the terms of the Note, and GTI sent a Notice of Default to Hermes on September 25, 2023. (PSOF ¶¶ 16, 19–20.) After Hermes failed to pay the debt in full, GTI sought payment from Myers as one of the Guarantors based on the Guaranty Agreement's provision that GTI could seek payment from any one or more of the Guarantors without exhausting GTI's remedies against Hermes or any other party. (PSOF ¶¶ 12, 26.) After Myers failed to pay the debt in full as Guarantor, GTI filed this lawsuit raising a single claim for breach of contract against Myers[2] and seeking damages in the form of payment of the remaining balance of the loan, interest, attorneys' fees, and "any other monetary damages in an amount according to proof at trial." (Compl. at 6, Prayer ¶¶ 1–4.)

Myers avers that this is not the whole story. In his Declaration, he states that Glimcher represented to him that "GTI could set up, manage and assist Hermes with all of its laboratory set up needs and in short order." (DAMF Ex. 1, Myers Decl. ¶ 4.) As a result,

---

[2] In the Complaint's "Causes of Action" section setting forth GTI's "Breach of Contract" claim, GTI alleges that "Hermes breached the [RLA] and Promissory Note by failing to pay GTI the amounts it owes," that "Myers, as the guarantor of each contract, breached the Guaranty by failing to pay GTI the amounts Hermes owes as he promised to do pursuant to the Guaranty," and that "Defendant's failures caused GTI damages." (Compl. ¶¶ 25–26.) Because GTI only named and served Myers as Defendant and does not allege that the Court should disregard the corporate form such that Myers could be liable for Hermes's alleged breach of the RLA and Note, the only breach of contract claim before the Court is Myers's alleged breach of the Guaranty Agreement. Indeed, it is the only contract before the Court to which Myers is a party.

"GTI and Hermes entered into an oral agreement, wherein GTI agreed to set up, manage, and supervise Hermes['s] laboratory facility, including the procurement of all licenses and credentialling Hermes required to conduct and provide medical diagnostic testing, in exchange for a management services fee Hermes agreed to pay." (Myers Decl. ¶ 6.) "GTI asked that while it was working to establish Hermes['s] lab and the required credentialling, . . . Hermes refer all of its testing samples to GTI and GTI would run those samples through its facility. In exchange, GTI agreed to pay Hermes a referral fee." (Myers Decl. ¶ 9.) To memorialize this agreement, GTI and Hermes entered into a Laboratory Management Agreement ("LMA"). (Myers Decl. Ex. A.) After they executed the LMA, Glimcher told Myers that "GMI could not pay Hermes directly for the referrals as GTI was obligated to under the LMA" because "doing so could violate various medical referral statutes, including the Physician Self-Referral Law, also known as the Stark Law." (Myers Decl. ¶¶ 13–14.) So Glimcher proposed to Myers that Hermes enter into the RLA to set up a line of credit that "would operate as an offset against the referral fees that GTI owed Hermes," which Myers agreed to. (Myers Decl. ¶¶ 15–16.) In his Declaration, Myers makes no mention of his decision to individually execute the Guaranty Agreement, but he signed the Guaranty on his own behalf the same day he signed the RLA and Note on behalf of Hermes. (PSOF Exs. 2–4.)

Myers avers that, rather than pay Hermes its referral revenues by way of a line-of-credit/RLA offset, GTI "concocted bogus charges" against Hermes such that it owed Hermes no money under the LMA, even though Myers claims Hermes was entitled to over $1 million in revenue over the relevant period. (Doc. 31, DSOF ¶ 46; Myers Decl. ¶ 54.) Myers also claims that GTI intentionally delayed obtaining the promised credentialling on behalf of Hermes such that Hermes was delayed in starting to conduct its own testing and bring in the associated revenue. (Doc. 31, DSOF ¶ 46; Myers Decl. ¶ 54.) Hermes thus had to borrow money against the line of credit "to stay afloat" and, because it did not have incoming revenue, it could not meet the repayment schedule under the Note. (DSOF ¶ 46.) . . .

Myers claims that GTI made "knowingly false representations" about the necessity and purpose of the line of credit, such that he was induced to enter into the RLA "under false pretenses." (Myers Decl. ¶¶ 52, 54.) In his Answer to the Complaint, Myers raises numerous affirmative defenses to GTI's breach of the Guaranty Agreement claim, including unclean hands, equitable estoppel, waiver, accord and satisfaction, ratification, acquiescence, account stated, payment, unilateral or mutual mistake, and part or full performance. (Doc. 15, Answer at 5–7.) Myers also contends that GTI breached the LMA, and that claim is subject to arbitration under the terms of that agreement, which Hermes has initiated against GTI. (MSJ Resp. at 4.)

The Court held a Rule 16 case management conference in this matter on August 22, 2024, and entered a Scheduling Order setting a dispositive motion deadline of August 6, 2025, and a discovery deadline of September 8, 2025. (Docs. 19, 20.) GTI filed its present Motion for Summary Judgment about six weeks later, on October 4, 2024, after the parties had exchanged initial disclosures but before they had conducted any discovery. (MSJ; 56(d) Mot. at 2.) In addition to filing a Response to GTI's Motion for Summary Judgment, Myers has filed a Motion for Relief requesting that the Court defer ruling on, or deny, GTI's Motion under Federal Rule of Civil Procedure 56(d) so that the parties have the opportunity to conduct discovery. (56(d) Mot. at 10.) The Court now addresses the pending Motion for Summary Judgment and Rule 56(d) Motion for Relief.

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, as long as it is supported by affidavits or other evidentiary material. *Anderson*, 477 U.S. at 255. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Id.* at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citation omitted)).

On a Rule 56(d) motion, the Court may defer ruling on a party's motion for summary judgment (or deny that motion) if the opposing party shows (1) the specific facts it hopes to elicit from further discovery; (2) that the facts sought exist; and (3) that the sought-after facts are essential to oppose summary judgment. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The decision to grant or deny

1 a Rule 56(d) motion is within the court's discretion. *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003). "Where, however, a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule [56(d)] motion fairly freely." *Id.*

**III.    ANALYSIS**

As a threshold matter, counsel for Myers failed to comply with the provision of the Court's Scheduling Order stating, "Any party filing a motion for summary judgment, motion for partial summary judgment, or response thereto, shall not file a statement of facts or controverting statement of facts exceeding 10 pages in length." (Doc. 20 ¶ 15.) Myers's Statement of Facts is 57 pages in length, and it repeats the same two-page "paragraph," verbatim, 19 times. (Doc. 31.) This useless repetition defeats the very purpose of the Court's Order restricting the Statement of Facts to ten pages and results in judicial inefficiency and waste. Accordingly, the Court does not consider the first 47 pages of Myers's Statement of Facts and relies only on pages 48 through 57 in resolving the pending motions. Counsel for Myers is admonished that further non-compliance with the Court's Orders may be met with sanctions.

The parties' motion practice places this case in a posture in which the Court must determine whether GTI has shown that no genuine issue of fact remains that Myers breached the Guaranty Agreement and, relatedly, whether Myers has failed to state the affirmative defense of fraudulent inducement as a matter of law. If so, GTI is entitled to summary judgment on Myers's liability unless Myers has adequately stated another affirmative defense and identified specific, existing facts he hopes to elicit in discovery going to that defense. In that instance, he is entitled to discovery and the Court will deny GTI's summary judgment request with leave to refile upon the close of discovery.

**A.    Choice of Law**

GTI's single claim in this case is that Myers breached the Guaranty Agreement, which provides it "shall be construed in accordance with and governed by the laws of the

state of Arizona without regard to its conflicts of law rules." (Guaranty Agreement § 11.) For its part, the RLA also provides it "shall be governed by the laws of the State of Arizona without regard to any rules of conflict or choice of laws which require the application of laws of another jurisdiction." (RLA § 9.) The Note contains no choice of law provision, but under its terms, payment was to be made in Arizona. (Note § 1.) The parties do not proffer any law other than Arizona's that could properly apply to disputes concerning these agreements or their enforceability.

When the Court has jurisdiction based on the diversity of the parties, as in this case, it must apply Arizona's choice of law rules to decide which state's law should govern the issues raised in the case. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Arizona has adopted the choice of law rules of the Restatement (Second) of Conflict of Laws ("Restatement"). *Bryant v. Silverman*, 703 P.2d 1190, 1191 (Ariz. 1985). Under the Restatement, although parties do not have "unfettered freedom to contract at will" on the choice of law, *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441–42 (Ariz. 2003), and state interests and regulation must always be taken into account, Restatement § 187 cmt. g, in this instance, Arizona has a substantial relationship to the parties and relevant transactions under § 187(2) of the Restatement.[3] Accordingly, Arizona law applies to the claims and defenses in this matter.

**B.  Breach of the Guaranty Agreement**

Under Arizona law, a payee under a guaranty agreement may bring a claim for breach of the guaranty agreement when a guarantor fails to pay the payee upon default of the underlying obligation. *Tenet Healthsystem TGH, Inc. v. Silver*, 52 P.3d 786, 788 (Ariz. Ct. App. 2002). "The nature and extent of a guarantor's liability depends upon the terms of the guaranty contract." *Id.* In *Tenet*, the guaranty at issue recited that the guarantors agreed to enter into the guaranty as an inducement for the payee—seller of a hospital—to finalize the sale to a buyer, where the buyer executed a promissory note to the seller as part

---

[3] To the extent some of the issues presented here "could have been resolved by an explicit provision in [the parties'] agreement directed to that issue," the parties' choice of Arizona law is applied under § 187(1) of the Restatement.

- 7 -

of the transaction (constituting the underlying obligation). *Id.* at 787. Upon default, the court declined to accept the guarantors' defense that the sole intent of the parties to the guaranty agreement was to ensure the sale was finalized and the seller was compensated in one form or another, such that the guarantors' obligation to the creditor was extinguished when the sale was finalized. *Id.* at 790. The buyer defaulted on the underlying obligation by failing to timely pay the seller on the promissory note, and by its terms, the guaranty was an unconditional agreement of the guarantors to pay or perform the obligation upon default. *Id.* at 789–91 (emphasizing that the guaranty's terms provided for "due and punctual payment" by the guarantors upon default of the underlying obligation, and citing with approval case law concluding that, for the purpose of releasing the guarantors from their obligation, collateral proceeds collected by the payee are not the same as principal payments).

Here, the terms of the Guaranty Agreement similarly provided for prompt payment by the Guarantors, jointly and severally, of the outstanding indebtedness under the RLA resulting from Hermes's default upon demand from GTI. (Guaranty Agreement § 1.) GTI demonstrates that it sent notice of Hermes's default and demand for payment to Myers as Guarantor, that he failed to pay, and that the terms of the Guaranty Agreement permitted GTI to bring this suit against Myers to recover the obligation guaranteed. (Guaranty Agreement §§ 1, 4, 9; PSOF Ex. 1, Glimcher Aff. ¶ 9; PSOF Ex. 5.)

Myers does not dispute the construction of the Guaranty Agreement, that he executed it, or that he failed to pay the associated obligation. Instead, he implicitly argues his theory of defense—without citation to relevant Arizona case law—that because Hermes's debt under the RLA—the obligation underlying the Guaranty Agreement—should have "operate[d] as an offset against the amounts GTI owe[d] Hermes for the tests GTI ran on Hermes['s] behalf prior to Hermes obtaining its licensure," Hermes was not bound to pay GTI under the RLA and Note, so Myers was also not bound to pay under the Guaranty Agreement.[4] (*See* MSJ Resp. at 12–13.) Indeed, a similar legal proposition has

---

[4] The crux of Myers's argument in his briefs is that he should be entitled to discovery under Rule 56(d) to flesh out his theory of defense, but for that to be true, the theory of

- 8 -

arisen in Arizona case law—cited by GTI, not Myers. (MSJ at 3–4.) In *Howard v. Associated Grocers*, 601 P.2d 593 (Ariz. 1979), the Arizona Supreme Court stated that "[a] guarantee is a promise to pay an obligation between a creditor and debtor"; it is thus "secondary or collateral to the principal contract, and unless the debtor himself is bound to pay, the guarantor is not bound." *Id.* at 595 (citing *38 Am. Jur. 2d*, Guaranty § 51 at 1054). But, as that Court pointed out, this principle applies where, under the terms of the applicable guaranty, the guarantor does not agree to remain liable after a release of the underlying debtor's obligation by operation of law. *Id.* at 596. That Court distinguished the case before it with its prior decision, *Maestro Music, Inc. v. Rudolph Wurlitzer Co.*, 354 P.2d 266, 271 (Ariz. 1960), in which the guarantor explicitly agreed under the terms of the guaranty that it remained liable even if the creditor released any and all rights against the debtor, and the Court held that agreement binding. Thus, in *Maestro Music*, the guarantor remained liable under the guaranty even after "the debtor was released by operation of law due to the conduct of the creditor." *Howard*, 601 P.2d at 596 (citing *Maestro Music*, 354 P.2d at 271).

The Guaranty Agreement in this case contains just such a provision. It states:

> Guarantors hereby agree that Guarantors' obligations under the terms of this Guaranty shall not be released, diminished, impaired, modified, affected or limited in any manner whatsoever by the occurrence of any reason or event, including without limitation, one or more of the following events: (a) the taking or accepting of any other security for any or all of the Guaranteed Obligations; (b) any indulgence, compromise, settlement or release which may be extended by Payee [GTI] to Maker [Hermes], Guarantors or any one or more other parties liable in whole or in part for the Guaranteed Obligations for such consideration as the Payee [GTI] may deem proper; . . . [or] (d) any renewal, extension, or rearrangement of the payment of any or all of the Guaranteed Obligations with or without notice or consent of the Guarantors.

(Guaranty Agreement § 2.)

Therefore, even if Myers were to garner testimony in the discovery he now requests to show that Hermes and GTI intended for the RLA—the obligation underlying the

---

defense must not fail as a matter of law.

- 9 -

Guaranty Agreement—to act as an offset to referral revenue owed by GTI to Hermes, he as Guarantor remained liable for the RLA obligation under the explicit terms of the Guaranty Agreement.[5] GTI has thus shown that no genuine dispute of fact exists as to Myers's liability, at least under the explicit terms of the Guaranty Agreement.

### C. Affirmative Defenses

The Court has spent significant effort trying to parse out and understand Myers's theories underpinning his opposition to summary judgment in favor of GTI on its breach of the Guaranty Agreement claim. Myers posits that a number of affirmative defenses going to the unenforceability of the RLA may relieve him of liability under the Guaranty Agreement, but he fleshes only one theory out. In resisting GTI's Motion for Summary Judgment, Myers argues in his Response that the question "whether the RLA is an enforceable agreement is a question of fact for the jury," specifically setting out his affirmative defense to GTI's claim for breach of the Guaranty Agreement by contending that he

> was induced into executing the [RLA] based on Glimcher's knowingly false representations, namely that 1) without [his] execution of the [RLA], Hermes would not be able to be compensated for its referrals to GTI without violating the medical referral statutes, and 2) the [RLA] would operate as an offset against the amounts GTI owes Hermes for the tests GTI ran on Hermes['s] behalf prior to Hermes obtaining its licensure.

(MSJ Resp. at 13 (emphasis omitted).)

To begin with, Myers has not pled the affirmative defense of fraudulent inducement in the Answer, nor can the Court glean from any of the myriad defenses Myers did plead a defense of fraudulent inducement. (*See* Answer at 5–7.) The Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings," but "defendants may raise an affirmative defense for the first time in a motion for summary

---

[5] The Guaranty Agreement also provides: "The obligations, guaranties, covenants, agreements and duties of Guarantors under this Guaranty are primary obligations of Guarantors and shall not be subject to any counterclaim, setoff, deduction, diminution, abatement, recoupment, suspension, deferment, reduction or defense based upon any claim that Maker [Hermes], Guarantors or any other person or entity may have against Payee [GTI]." (Guaranty Agreement § 3.)

judgment only if the delay does not prejudice the plaintiff." *Magana v. Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). Here, GTI responded substantively to Myers's asserted affirmative defense in both the Reply to its Motion for Summary Judgment and Response to Myers's Rule 56(d) Motion, so no prejudice is evident arising from the fact that Myers raised the defense of fraudulent inducement for the first time in his briefs.

Myers may have declined to allege in the Answer that Hermes was fraudulently induced into executing the RLA for good reason: he has no standing to do so. As detailed above, Myers did not enter into the RLA and Note; Hermes did. "A basic axiom of corporate law is that a corporation will be treated as a separate entity unless there is sufficient reason to disregard the corporate form." *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010) (quoting *Standage v. Standage*, 711 P.2d 612, 614 (Ariz. Ct. App. 1985)). Arizona courts will disregard the corporate entity and pierce the corporate veil if a plaintiff pleads facts sufficient to show: (1) that the corporation is the "alter ego or business conduit of a person"; and (2) that disregarding the corporation's separate status is "necessary to prevent injustice or fraud." *Id.* (first quoting *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972), and then quoting *State v. Angelo*, 800 P.2d 11, 14 (Ariz. Ct. App. 1990)). Neither Myers nor GTI make any argument or allege any facts to give the Court a reason to ignore the corporate form here, and Myers as an individual has not demonstrated any legal basis for him to be able to raise a defense to the formation or enforceability of the RLA or Note. Although Myers spends most of his substantive briefing addressing them (MSJ Resp. at 11–13; 56(d) Mot. at 7–8), claims for breach of the RLA and Note, or for a declaration that the RLA and Note are unenforceable, are simply not before the Court.[6] Nor does Myers cite any case law in which a court has examined the

---

[6] In his Answer, Myers claims that "this action is barred, in whole or in part, because it failed to include an indispensable part[y], Hermes, who is the party who contracted with GTI, as part of this action." (Answer at 7.) As stated *supra*, in this action, GTI does not bring a claim for breach of the RLA and Note against Hermes. It brings a claim against Myers for breach of the Guaranty Agreement. Neither Myers nor GTI have engaged in any motion practice since the commencement of this lawsuit over a year ago to expand this litigation to include Hermes as a party or a claim regarding the enforceability of the agreements Hermes entered into: the RLA and Note.

- 11 -

enforceability of the obligation underlying a guaranty where the party entering into that obligation is not party to the lawsuit.

To the extent the Court can interpret Myers's asserted affirmative defense of fraudulent inducement to apply to his individual execution of the Guaranty Agreement—something he does not support with evidence in his Declaration or argue in his briefs—the defense fails. Under Arizona law, the elements of fraudulent inducement as an affirmative defense to a breach of contract claim include that the party alleging reliance on a materially false representation had the right to rely on the representation. *Lininger v. Sonenblick*, 532 P.2d 538, 539 (Ariz. Ct. App. 1975).

Applying the only averments of misrepresentations before the Court—the misrepresentations Hermes allegedly relied on to enter into the RLA—to Myers's personal execution of the Guaranty, Myers had no right to rely on Glimcher's alleged statement that GTI intended for the RLA to act as an offset to referral revenue owed by GTI to Hermes, because the Guaranty Agreement's explicit terms stated Myers as Guarantor remained liable for the RLA obligation even if it was offset by collateral proceeds. *See Tenet Healthsystem TGH, Inc.*, 52 P.3d at 789–91 (concluding that, by its express terms, the guaranty was an unconditional agreement of the guarantors to pay or perform the underlying obligation upon default, and collateral proceeds collected by the payee are not the same as principal payments on the underlying obligation)*; Lininger*, 532 P.2d at 540–41 (concluding the party claiming reliance on an alleged representation had no right to rely on the representation as a matter of law because the agreement had to be reduced to writing to comply with the Statute of Frauds). Moreover, the Guaranty Agreement contains a provision stating that the written agreement "embodies the final, entire agreement of Guarantors and Payee [GTI] with respect to the subject matter hereof and supersedes any and all prior or contemporaneous agreements, representations and understandings, whether written or oral relating to this." (Guaranty Agreement § 15.) In short, an oral promise of offset of the underlying obligation had no impact on the obligation Myers individually agreed to by the express terms of the Guaranty.

Likewise, Glimcher's alleged statement that direct payments from GTI to Hermes could violate medical referral statutes applies, if at all, to Hermes's execution of the RLA, not to Myers's separate agreement to guarantee the underlying obligation from Hermes to GTI. That is, Myers does not aver that Glimcher represented that any failure by Myers to execute the Guaranty Agreement could violate medical referral statutes. In sum, Myers had no right to rely on Glimcher's alleged representations as to the necessity and purpose of the RLA to separately execute the Guaranty Agreement, and Myers's affirmative defense of fraudulent inducement fails as a matter of law as applied to the enforceability of the Guaranty Agreement.

In the Answer and in his briefing, Myers also refers to other affirmative defenses, but he describes them only in conclusory fashion and does not flesh them out as applied to the execution of the Guaranty Agreement, let alone identify the specific, existing facts he hopes to elicit going to those affirmative defenses as required to proceed to discovery under Rule 56(d). (*See, e.g.*, Rule 56(d) Mot. at 7–8.)

## IV.   CONCLUSION

Myers has failed to state the affirmative defense of fraudulent inducement as a matter of law as applied to the enforceability of the Guaranty Agreement, and he has not identified specific, existing facts he hopes to elicit in discovery going to any other affirmative defense, to the extent any other alleged affirmative defense could apply here. Accordingly, the Court will deny Myers's Rule 56(d) Motion. For its part, GTI has shown that no genuine issue of fact remains that Myers breached the Guaranty Agreement, and it is thus entitled to summary judgment on Myers's liability under the Guaranty Agreement. Under the terms of that agreement, GTI is entitled to the unpaid portion of the underlying obligation from Hermes to GTI including interest as well as its costs and reasonable attorneys' fees. GTI shall file a separate motion for judgment justifying the damages sought, to include any application for reasonable attorneys' fees in compliance with LRCiv 54.2.

. . .

1    **IT IS THEREFORE ORDERED** denying Defendant's Motion for Relief Under Rule 56(d) (Doc. 23).

**IT IS FURTHER ORDERED** granting Plaintiff's Motion for Summary Judgment (Doc. 21). Plaintiff is entitled to summary judgment on Defendant's liability under the Guaranty Agreement and damages to include the unpaid portion of the underlying obligation including interest as well as Plaintiff's costs and reasonable attorneys' fees. By **July 11, 2025**, Plaintiff shall file a separate motion for judgment justifying the damages sought, to include any application for reasonable attorneys' fees in compliance with LRCiv 54.2.

Dated this 16th day of June, 2025.

Honorable John J. Tuchi
United States District Judge